I am Attorney Sarah Schmeiser. I'm here representing Keith Henyard in this matter. To jump right in, according to Mickens v. Taylor interpreting Tyler v. Sullivan, a defendant must show that counsel actively represented conflicting interests in order to establish the constitutional predicate for an ineffectiveness claim. The question here really comes down to were the decisions of the Wisconsin Court of Appeals and the Eastern District of Wisconsin reasonable when they decided there was no actual conflict in this case? The Court Commissioner Parisi sat on this case and issued a decision to bind over the defendant. He remained employed as a Court Commissioner, in this case and others, and his job as a Court Commissioner is to act as a neutral, detached magistrate employed by the state, the county, the people of the state of Wisconsin. And this same attorney, Parisi, also was employed as Keith Henyard's defense attorney. Could he be- Can we get to the unreasonableness question without first asking whether or not it was contrary to or unreasonable as to Supreme Court law? Isn't that the framing as to how we have to review? Yes, and I think the- so what I would say is that when the same attorney, Parisi, is in the same case act- supposed to act as a self-advocate- And how do we get around Mickens? As far as the holding, do you disagree with the holding that the district court has calculated from Mickens? I would say that Mickens continues to say that there's a difference between an actual conflict with adverse effects, which is what a defendant must show, and the prejudice prong of Strickland. There's still something different there that has to be shown, and here we are not able to show the Strickland prejudice prong. What about the adverse effect? What- the Wisconsin courts found that Parisi's representation did not have an adverse effect on your client, and I haven't seen any argument from you as to what that adverse effect was. If you could identify for us, please, what that adverse effect- which is a separate- I think you're absolutely right- that is separate from the prejudice issue. So put prejudice aside, what is the adverse effect of the representation here? So the adverse effect is the fact that- and this is also stated- that Commissioner and Attorney Parisi should not have ever been the counsel in this case. He should not have- and I think there's a stamina- But why was he the counsel, and why was he? Because, apparently, no one- there's no evidence in the record. In fact, the transcript says that neither Attorney Parisi, Commissioner Parisi, nor Keith Haynard recognized that he had previously been the court commissioner in the case. That's not what the Wisconsin Court of Appeals said. The Wisconsin Court of Appeals found that Mr. Haynard knew when he hired Mr. Parisi that he had been the commissioner. And there's no evidence of that? The only evidence- That's what- we're on habeas. I understand. And that's what the Wisconsin Court of Appeals found, and you have not challenged any of the factual findings of the Wisconsin Court. Correct. So how does that impact our initial assessment of an actual conflict if your client knew he was hiring the person who was the commissioner in this case? I don't think that it does, because the person who had the obligation to avoid the conflict was Attorney Parisi. But your client can certainly waive it, and if he hires him knowing he was the commissioner, why hasn't he waived it? There's no evidence of any kind of a waiver, other than you could say, I guess, and I think this is what the Court of Appeals said, it would have to be an implicit waiver. Well, it surely does look like a circumstance in which a petitioner manufactured his own distress in order to obtain what he thought would be relief. I wanted to ask you this. Post-conviction counsel was asked by the circuit court judge, what did Mr. Parisi do that was in any way compromising his representation? And the response was, well, I don't know that I can say specifically. So how were Henyard's interests adversely affected, given that his own post-conviction counsel couldn't answer the question? Right. So to point to some specific thing that was done incorrectly that harmed Keith Henyard is what we can't do here. We don't have the ability to say this specifically was done wrong. What I would say, though, is that, and here Strickland, citing DeSullivan, said, it's counsel's duty to avoid the conflict. It is difficult to measure precise effect on defense representation when the representation is corrupted by that conflicting interest. And counsel breaches a duty of loyalty to their client, which is the most important duty they have. But I guess, let's go, if we accept that, if we accept that there was a conflict and that this former county commissioner should have caught it when he ran his conflict check, how did that adversely affect Mr. Henyard's outcome? That's what I'm listening for. So the adverse effect is, I think, the consequence to the system itself, in terms of the fairness or unfairness of this. But Mickens says there has to be an adverse effect on counsel's representation of your client. And it doesn't define exactly what that means in terms of, so the U.S. Supreme Court has talked about the adverse effect of conflicts in actual conflict cases being the fairness of the system. But in Sullivan, the court said that the conflict has to adversely affect his lawyer's performance, which is separate. I understand that you might be right about the system and the appearance of it, certainly, but for Strickland purposes, it has to adversely affect the lawyer's performance. As you can tell, that's what we're struggling with, what's in there that the lawyer's performance was adversely affected. And I can't point to a specific thing. What I can say is that I think the problem is Attorney Parisi has every reason to behave in a way that keeps him employed as Commissioner Parisi in the same court system that he's there for. I can't say I think he did this exact thing wrong. What I can say is that these interests are absolutely in actual conflict. And I think that just because I can't say he should have pushed harder to get a better deal or go to trial or do something, I can't say that. And that's part of why Strickland says you presume prejudice in certain cases because of that difficulty where there's an actual conflict. Prejudice is separate, as we talked about at the beginning, and you were right. Prejudice is separate here. You can't even get to prejudice unless you show this adverse impact on the lawyer's performance. Why was Parisi's testimony not challenged on appeal? Have you any idea? I think because Parisi's testimony was, if you look at the post-conviction motion, page 15 and 16, Attorney Parisi was asked, did Keith Hinyard recognize you? And he said no. We never talked about it. And then he testified he was a part-time commissioner for the past 20 years or something like that. So those are factual statements that I would not disagree with. And so if he doesn't know, Parisi doesn't know that he was the county commissioner part-time who was filling in for another commissioner, he has no idea, it's not contested that he had no idea that this was the same person until he receives a post-conviction letter from counsel. And so how would that have adversely affected his performance if we're not contesting that he didn't know? So Mickens specifically states that the standard is knows or reasonably should know that a conflict exists. And here, this is an actual direct conflict in the interest. And so, and the attorney, while he said he didn't know or remember, he had a conflict check in his file that flagged this relationship. So while he said he didn't know or remember or perhaps look at his conflict check, it was certainly reasonable that he should have known, frankly, it was reasonable that the trial court should have known as well that this conflict existed throughout. But he did say that he looked at his conflict check. That's what's so odd. How did he miss his own name? Indeed. All right. Thank you. Thank you. May it please the court, Assistant Attorney General Daniel O'Brien. Hi, Mr. O'Brien. Good morning. I think we're all agreed here that Mickens v. Taylor is the established Supreme Court precedent to be applied. And Mickens v. Taylor plainly requires the petitioner to prove not only that an actual conflict of interest occurred, that means a conflict where the lawyer took one interest over his client's interest, whether that be representing a second defendant to the detriment of his client or a financial interest to the detriment of his client or some other interest. And having proved that actual conflict of interest, the petitioner must also prove that it adversely affected counsel's performance. But, look, do you think it's a problem as to Parisi's representation that we will never know, ever, if another attorney would have done a better job? We cannot know whether Parisi would have performed better absent an alleged conflict of interest. And how could any defendant ever prove that some other unknown who knows who attorney would have done better? Well, I think we can know here if we accept the credibility determination that Parisi never was unaware of the conflict. So the conflict could not have affected his performance if that credibility determination stands up. And Mr. Henyard has yet to challenge that credibility determination. In the Wisconsin Court of Appeals, the trial judge believed Mr. Parisi when he said he missed it in his conflict check and that the Wisconsin Court of Appeals deferred to that credibility determination is not clearly erroneous. And this court must find, must accept that credibility determination unless it determines that this was clearly erroneous and an unreasonable determination of the fact. Are we accepting that it was an actual conflict? Pardon me? Are we accepting that Wisconsin, is there an acceptance here that there was an actual conflict? No, we do not. Even though the violation of Wisconsin Supreme Court Rule 20-11-12 says, a lawyer is prohibited from representing anyone in connection with the matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer. Correct. The rule applies and as we know, we're not, Mickens and Kyler and the Supreme Court cases make clear that we're not enforcing the state code of ethics. This is a constitutional matter. But having said that, obviously there's a violation of that rule, assuming of course that his participation is considered substantial. We'll assume that for the sake of argument. But an actual conflict, as this court said in Blake. I'm sorry, maybe you didn't hear the question. I said that's what I was asking. Are we assuming, are we accepting that there was a conflict and you're wanting us to focus on whether or not a conflict adversely affected? I'm just trying to get clarity. Allow me to finish, please. I'm asking, are you directing our attention more in the Mickens case, whether or not there was a conflict? Did it adversely affect the representation? It's both. Okay. Because I'll concede that there was a potential conflict here. Okay. And that's what he has proven, a potential conflict. But why shouldn't there be a presumption of prejudice when the judicial officer who binds an individual over for trial, binds over for trial, and then profits, makes money from that decision by providing paid representation without disclosing the conflict? And I take that the state court docket had to, the entries had to note that Parisi was the commissioner who found probable cause. Again, that assumes that he was aware that he made this decision to, that he accepted representation by Mr. Henyard because he was the court commissioner. And there's no, again, unless you're willing to reject that credibility determination in favor of him that he was completely unaware of this, then, again, we have a potential conflict. Had he been aware of it, then we have an actual conflict. That's my position. But that aside, getting back to your question, Your Honor, yes, the question then becomes what impact this had on counsel's performance. And Mickens makes it quite clear that he has to show an adverse impact. That was my question. How can he do that? How can we ever know what another attorney might have accomplished? Because if he had made a decision that was affected by the conflict, for instance, if he was aware of it, the best example is multiple defendants where an attorney is representing two defendants and they have conflicting defenses. And he sacrifices one defendant's defense to benefit the other one. There's an actual conflict, and counsel's performance is affected. Or if here, if Mr. Henyard said, I don't want to plead guilty, and Mr. Parisi said, well, I'm going to recommend that you plead guilty. Otherwise, you know, let's say he doesn't want to plead guilty because I don't think there was probable cause to buying me over. And Mr. Henyard said, well, I ruled that there was probable cause, and I'm not going to back down on that. And so I'm recommending that you plead guilty. Now we've got adverse impact. There are a million different things that, you know, it could have been. But have you seen any other case quite like this? Well, you know, and I think we have to look at the other side of the coin. It's pretty obvious that Mr. Henyard was aware of this and that he hired him anyways five months after the preliminary hearing. And perhaps he thought that there was benefit to having someone in a judicial position representing him. You know, and so we're speculating both ways. And Mickens says you can't speculate. There has to be actual proof of an adverse impact on performance. And Mr. Henyard plainly, and this was developed at the post-convention hearing, he plainly hired him to cut the best in counsel. He wanted me to cut the best deal he could because he knew they had him. He knew the confidential informant. He knew that basically he was not going to win at a trial. So get me out of this the best you can. And that's what Mr. Parisi set about to do. Have you ever seen a case like this in the books? No, and I certainly haven't seen controlling Supreme Court precedent like this as well. No. And I think that that's the thing. This is an unusual situation. Perhaps Mr. Parisi wasn't careful enough in checking his records. Perhaps it was because this was such a short ministerial proceeding, a preliminary waiver where Mr. Henyard wasn't even contesting the probable cause to bind him over for trial. He was not challenging it. He was waiving his right to challenge that. And the waiver hearing consumed four and a half pages of transcript where his prior attorney waived his right to a preliminary hearing. Mr. Henyard has never challenged that probable cause determination, even when he was represented by another attorney. And another court commissioner reviewed the complaint after Mr. Henyard's arrest and also found probable cause just based on the complaint. And then sometime later it goes to this perfunctory preliminary hearing, and Mr. Henyard's attorney, who was not Parisi, obviously Parisi was on the bench, but I think it was a Mr. Smith, said, Your Honor, we're going to waive the preliminary hearing. And Mr. Parisi says, Fine, I've reviewed the complaint, and based on the complaint I will find probable cause. So we're not talking about a contested hearing. We're not talking about an issue that was ever in dispute by anyone, not even at trial, post-conviction, at any point. And we're talking about awarding Mr. Henyard a new trial because Mr. Parisi didn't check his records closely, and that's not dictated by Supreme Court precedent. In the end, my position is that Mr. Henyard is asking for automatic reversal based on a potential conflict that he identified, and there is no Supreme Court precedent. The Supreme Court precedent says when you prove a potential conflict, that adversely affected performance, then you must also prove strickland prejudice, and he concedes that he cannot prove strickland prejudice. I think that you may have conceded, but tell me if I'm wrong. Oh, you will. I think you may have conceded that there was the appearance of an actual conflict. A potential conflict. Because, again, I don't see how you can have an actual conflict if the person, the supposedly conflicted attorney, is unaware of the conflict. It's a great way to get clients, Mr. O'Brien. I'm sorry? It was a great way to get clients. If you're aware of it. And so you have to overturn the credibility determination, and I don't think there's any basis to do that, especially since Mr. Henyard never challenged it. Thank you so much. Very briefly, to that last point, I don't think you have to overturn the credibility determination because the status of the relationship that Commissioner Preezy had and Attorney Preezy had was in conflict. Whether he knew or reasonably should have known, I think it's very clear that that was an actual conflict. The question is whether the court system will allow that to go forward, whether it is used by a defendant or whether it's used by the state to uphold a conviction, is this a way that we can allow our court system to go forward and be run? We can denigrate the preliminary hearing or the waiver of the preliminary hearing, but that is a due process right. It takes the place of a grand jury hearing in the state of Wisconsin. It has meaning, and Commissioner Preezy bound the defendant over for trial and later represented him. I'm not aware of any cases like this, and I hope it hasn't happened before. I hope it doesn't happen again. I've been on the bench 40 years, and I have never seen anything like this. I know. I look so young. I was a baby judge. But I think it still fits in the penumbra of habeas law because it's clear that it was an actual conflict. So thank you. Thank you. Thank you, Mr. O'Brien. Thank you, Ms. Schmeiser. We're going to take the case under advisement.